ing denied that he so testified before the coroner, defendant's counsel asked leave to send for the report of the coroner's inquest for the purpose of contradicting the witness. The court granted this application, but in doing so remarked: "The clerk down there writes things from a memorandum sometimes and gets parties to sign it without its being read. I know of an instance a short time ago where they signed testimony in the coroner's office and brought it up here, and it was written out by some clerk after the examination was over, and it was signed by the parties without it being read to them." This statement was made in the presence of the jury and was excepted to by counsel, and it does not appear that at any time was it withdrawn or explained away by the court. We think this was error prejudicial to the defendant, for the reason that it was well calculated to impeach in the eyes of the jury the correctness of the record in the coroner's office, upon which defendant relied to contradict the witness upon the most vital point in the case. It seems especially prejudicial from the fact that the witness thereafter stated that his testimony as given before the coroner had not been read over to him, and that it had not been correctly reported.

We think the court also erred in refusing to admit testimony to show that it had been the custom of the defendant durng the period of employment of the deceased to make "running switches," and switches of the character of the one upon which deceased was killed.

The plaintiff claimed that defendant was negligent in the manner of operating its cars, in making a "running switch," claiming that such a method of switching cars was unsafe to employes in the yard. On pages 103, 124 and 125 of the bill of exceptions it appears that defendant offered to prove that it had, with the knowledge of the deceased, been in the habit of making running switches upon tracks similar to the track upon which the deceased was killed. But such evidence was rejected, the court containing proof of such custom to the particular track upon which the injury was received.

In Railway Company v. Knittal, 33 Ohio St., 468, the question seems to have been decided as follows:

"If, however, such employe, with full knowledge of an habitual and continued negligence of the company or his superior fellow-employes in some particular matter, acquiesces therein and continues in the service of the company, without any objection or effort toward a correction of the neglect, he thereby waives his right against the copmany and takes the risk upon himself."

We think, therefore, the failure of the court to admit this evidence was error.

There are other assignments of error by defendant, but the two heretofore considered are the only ones we consider as being well taken.

It is urged that the court erred in refusing to charge the jury that the question as to the frog being blocked was an immaterial point in the case. This is based upon defendant's assumption that deceased was guilty of contributory negligence in stopping on the track in front of the caboose which had been cut loose from the engine, and that defendant's negligence in leaving the frog unblocked was not therefore the proximate cause of the injury.

But we are unwilling to hold as a matter of law that the deceased was guilty of contributory negligence in endeavoring to cross the track at the time of the injury. We think under the circumstances of this particular case the question of decedent's negligence in this particular should have been left to the jury. It was a question of fact for the jury under proper instructions of the court. As the question of the deceased's contributory negligence in this particular enters largely into the case, we have deemed it proper to give our reasons for holding that all assignments of error based upon the assumption that deceased was as a matter of law guilty of contributory negligence are not well taken.

We will not consider any other assignments further than to say that there are no errors in the record prejudicial to defendant company except the two herein first considered. For such prejudicial errors the judgment of the court below is reversed and the cause remanded for a new trial.

Ramsey, Maxwell & Ramsey, for Plaintiff in Error.

Jones & James, for Defendant in Error.

---

(Lucas County, Ohio, Common Pleas.)
WM. E. COLE v. SAMUEL A. HUNTER, TREASURER.

---

Assessments for paving street and for laying stone sidewalk in front of lot, made within the period of two years, each amounting to less, while both in the aggregate amount to more than 25 per cent. of the value of the lot, are different in kind, and cannot be added together to make them in the aggregate fall within the 25 per cent limitation of sec. 2271 R. S.

---

PUGSLEY, J.

This was an action to enjoin the collection of two assessments.

An assessment was made upon a lot for paving the street. Two years afterward another assessment was made upon this lot for a stone sidewalk in front

of the lot upon the same street. The aggregate of the two assessments exceeded 25 per cent. of the value of the lot. The question was whether the limitation in sec. 2271 R. S. applies to each assessment separately or to the aggregate of both assessments. That section provides that "the assessment specially levied upon any lot for any improvement shall not in any case exceed 25 per cent. of the value of such lot after the improvement is made." It was not claimed that the case came under sec. 2283 R. S. which provides a special limitation when a lot is assessed "for making two different streets within a period of five years." The court held that under sec. 2271 the two assessments could not be added together in applying the limitation, but that each assessment was valid to the extent of 25 per cent of the value of the lot after the improvement was made, for which the assessment was levied.

---

(Hamilton Co, O., Court of Common Pleas.)
1897.

THE CITY OF CINCINNATI FOR THE USE OF WILSON & STRACK v. THERESIA FUGMAN, et al.

---

1. While the construction of a sewer in a street is in the nature of a street improvement, yet "making" a street does not necessarily include the construction of a sewer.

2. The authority for street making, is found in statutes entirely different from the statutes authorizing the construction of sewers; but to each construction applies the law that the assessment for its cost shall not exceed twenty-five per centum of the value of the property.

3. The two constructions may proceed concurrently or be made at different times; but the assessment for the cost of each must be separately levied.

4. Where the assessments for each construction is less than the twenty-five per centum limitation, both may be levied with respect to the same property, although the time within which both street and sewer be made is less than five years.

HOLLISTER, J.

These cases are brought to enforce the payment of a sewer assessment of $2.00 per front foot of the respective properties of the several defendants, abutting on the street in which the sewer was built. The proceedings resulting in the assessments were all regularly taken under the statutes authorizing the construction of sewers and an assessment for the cost thereof, not exceeding $2.00 per front foot. It appears that the same street was improved by grading and paving in 1890, and the proceedings

to improve by the construction of the sewer were instituted in 1893, and the sewer was laid in 1894.

The defendants claim that the effect of these separate proceedings is such as to bring the case within the operation of sec. 2283 Rev. Stat., which provides that "special assessments" whether by the feet front or otherwise, shall be so restricted that the same territory shall not be assessed for making two different streets or avenues, within a period of five years, in such amounts that the maximum assessment herein provided will be thereby exceeded * * *."

The "maximum assessment" referred to, is that perscribed by sec. 2271, which for any improvement "shall not * * * exceed twenty-five per centum of the value of such lot or land after the improvement is made." The broad claim is made that a sewer improvement is a street improvement, and that abutting lands cannot within five years be assessed both for improving the street by grading, etc., and by improving it by constructing a sewer in it, where the cost of both exceeds 25 per cent of the value of the land, as in this case.

This court held in the case of Nitzel v. Village of St. Bernard, 3 N. P. 317, that "sewers are street improvements," under secs. 2264, 2935, 2696, and Hartwell v. C., H. & D. R. R. Co., 40 Ohio St. 155, and so they are a kind of improvement. An examination of the statutes discloses that under Chap. 4, Tit. XII, Div. 7, entitled "assessments", are found all of the provisions authorizing assessments for the contruction of streets, and of sidewalks, and of sewers, each of the different kinds of improvement being provided for by separate statutes, under specific subdivisions, respectively entitled, "assessments in general," "sidewalks and water courses," and "sewers and assessment therefor."

Section 2283 is found under the subdivision; "assessments in general," and apparently would apply to any kind of assessment; but its language restricts its application to cases where assessments are sought to be levied "for making two different streets" within five years.

It is very plain that the making of a street is quite a different matter from constructing a sidewalk, or building a sewer. Whether a sewer is a necessary part of a street improvement, depends upon circumstances. Probably but a small number, comparatively speaking, of streets are constructed with sewers in them, at the first instance. Usually sewers are laid, not as a part of complete street construction, but for the purpose of serving the needs of the people, whose lands abut on the street. Doubtless for this reason, the legislature provided separate systems of procedure and assessment, each applicable to the particular kind of improvement thought necessary at any certain time by the legislative body of a municipal corporation.

The effect of the decision in Nitzel v.